T.C. Memo. 2013-4

UNITED STATES TAX COURT

RONALD S. MILLS AND JUDY A. MILLS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26554-10.                    Filed January 9, 2013.

R determined a tax deficiency, an addition to tax under I.R.C.
sec. 6651(a)(1), and an accuracy-related penalty under I.R.C. sec.
6662(a). The deficiency stems from R's disallowance of certain
deductions taken by Ps' jointly owned entities treated as partnerships
for Federal income tax purposes. The parties stipulated the agreed
amount of the disputed income and expense items and the period of
late filing of the 2007 tax return for purposes of the I.R.C. sec.
6651(a)(1) addition to tax, leaving only the I.R.C. sec. 6662(a)
accuracy-related penalty in dispute.

Held: Ps are liable for the I.R.C. sec. 6662(a) penalty.

Ronald S. Mills and Judy A. Mills, pro sese.

<u>Sarah A. Herson</u>, for respondent.

[*2]        MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of an income tax deficiency of $111,404.68, an $18,620.17 addition to tax under section 6651(a)(1) for failure to timely file a Federal income tax return, and a $22,280.94 section 6662(a) accuracy-related penalty for the 2007 taxable year.[1]  Respondent based his determination on a $370,790 increase in flow-through income and corresponding computational adjustments.  Petitioners reported the flow-through income at issue from three limited liability companies taxed as partnerships:  Drake Financial, LLC (Drake), Malibu Equities, LLC (Malibu), and Waldo Properties, LLC (Waldo).  Each was owned 50% by petitioner husband and 50% by petitioner wife.  After concessions,[2] the sole

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as amended and in effect for the taxable year at issue.  The Rule references are to the Tax Court Rules of Practice and Procedure.

[2]On December 5, 2011, and March 12, 2012, the parties entered stipulations of settled issues stating the following:  (1) Drake is entitled to a $6,261 deduction for equipment expenses and a $4,500 deduction for the purchase of a truck; (2) Drake is not entitled to an additional $500 deduction for the purchase of a truck nor to a $116,667 amortization deduction; (3) Malibu is entitled to a $6,261 deduction for equipment expenses, a $4,500 deduction for the purchase of a truck, a $2,250 deduction for legal and professional expenses, and a $3,983 deduction for additional sec. 179 depreciation expenses; (4) Malibu is not entitled to an additional $500 deduction for the purchase of a truck nor to a $116,667 amortization deduction; (5)
                                                                    (continued...)

[*3] remaining issue before the Court is whether petitioners are liable for the section 6662(a) accuracy-related penalty.

FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulation of facts with accompanying exhibits,[3] the stipulation of settled issues, and the supplemental stipulation of settled issues are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in California.

Petitioners, Ronald S. Mills and Judy A. Mills, are in the real estate management business.  They conduct this business in part through three limited liability companies:  Drake, Malibu, and Waldo.  Petitioners formed these entities

_____

[2](...continued)
Waldo is not entitled to a $116,667 amortization deduction; (6) petitioners are not liable for an addition to tax under sec. 6651(a)(1) for failure to timely file their 2007 Federal income tax return for the period April 15, 2008, through October 15, 2008; and (7) petitioners are liable for an addition to tax under sec. 6651(a)(1) for failure to timely file for the period October 16, 2008, through December 11, 2008.

[3]At trial petitioners objected to Exhibits 15-J through 18-J and paras. 40 through 43 of the stipulation of facts on the grounds of relevance.  These stipulations and exhibits relate to the criminal conviction of petitioners' tax adviser.  Fed. R. Evid. 401 states:  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  We overrule petitioners' objections and find that the exhibits and the stipulations tend to make the reasonableness of petitioners' good-faith reliance upon their tax adviser more or less probable.

**[\*4]** on January 1, 2000, with the help of Robert A. Sandlin. It was around the same time that petitioners hired Mr. Sandlin to prepare the tax returns for the three LLCs and their individual income tax returns. In 2000 Mr. Sandlin worked briefly for a company called Tally & Co. He left Tally & Co. in 2000 and was self-employed before joining later that year a company named United Revenue Service. Mr. Sandlin stayed with United Revenue Service until 2006 when he went back to Tally & Co. In 2007 Mr. Sandlin joined a company called Strategic Tax & Financial Services Corp. Mr. Sandlin was an accountant but not a certified public accountant or an attorney. He was, however, an enrolled agent[4] until August 3, 2007, when his status became inactive.

As stated, Mr. Sandlin assisted petitioners in forming the three LLCs. Petitioners relied on Mr. Sandlin to establish depreciation schedules for the assets held by the LLCs. Mr. Sandlin also told petitioners that they could amortize the value of Mr. Mills' contribution of his life, time, and expertise in real estate management.

---

[4]An enrolled agent is an individual "who demonstrates special competence in tax matters by written examination administered by, or administered under the oversight of, the Director of Practice [now the Office of Professional Responsibility] and who has not engaged in any conduct that would justify the censure, suspension, or disbarment of any practitioner". 31 C.F.R. sec. 10.4(a) (2007).

**[\*5]** Petitioners and Mr. Sandlin valued this contribution at $1.75 million per LLC. Thus, the LLCs claimed amortization deductions of $116,667 per year per LLC.[5] This practice started in 2000, and the amortization schedule was 15 years. Before the 2007 taxable year, petitioners had taken amortization deductions of $116,667 per LLC for seven years, about $2.45 million in total. Respondent issued a notice of deficiency on September 3, 2010, and petitioners timely petitioned this Court for redetermination.

A trial was initially set for the trial calendar session beginning December 5, 2011, in Los Angeles, California. On December 7, 2011, we granted petitioners' oral motion to continue the case to allow them time to speak with their former adviser, Mr. Sandlin. Petitioners and respondent had only just found Mr. Sandlin, who was then residing in Colorado at a Federal penitentiary.

Mr. Sandlin, when he was not advising taxpayers to amortize the value of their own lives, was stealing money from clients' individual retirement accounts using forged power-of-attorney forms. He also kept for himself client money that

---

[5]The parties provided as stipulated exhibits tax returns for the LLCs for the 2004 through 2007 taxable years. For each of 2004 and 2005 Drake claimed an amortization deduction of $116,666, not $116,667. For 2004 and 2005 Drake allocated this deduction between two of its commercial real estate properties, Arroyo and Santa Anita. For 2006 and 2007 Drake reported the amortization deduction as a shared expense, which is how Waldo and Malibu reported the deduction for each of the 2004 through 2007 taxable years.

**[*6]** he had promised to pay over to Federal and State taxing authorities to settle outstanding tax liabilities. On January 22, 2009, Mr. Sandlin pleaded guilty to one count of wire fraud under 18 U.S.C. sec. 1343 and one count of willfully causing another to commit wire fraud under 18 U.S.C. sec. 2(b). On March 18, 2010, as part of an amended plea agreement, Mr. Sandlin agreed not to prepare Federal tax returns, represent people before the IRS, or hold himself out as an enrolled agent.

The trial went forward without Mr. Sandlin and was held in Los Angeles on March 12, 2012.

## OPINION

When the Commissioner seeks the imposition of penalties or additions to tax, the Commissioner bears the burden of production. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To meet this burden, the Commissioner must produce sufficient evidence establishing that it is appropriate to impose the penalties or additions to tax. See Higbee v. Commissioner, 116 T.C. at 446. However, the burden to establish reasonable cause remains with the taxpayer. See id. at 447.

Section 6662(a) imposes an accuracy-related penalty equal to 20% of an underpayment of tax attributable to one of five causes specified in subsection (b). Respondent contends that petitioners are liable for the penalty because of

**[*7]** negligence or disregard of rules or regulations or, alternatively, because the underpayment is due to a substantial understatement of income tax. Sec. 6662(b)(1) and (2).

For the purposes of the penalty, "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title". Sec. 6662(c). Under caselaw, "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). A substantial understatement of income tax in the case of an individual is (with certain modifications which do not apply in this case) an understatement of income tax that exceeds the greater of (1) 10% of the tax required to be shown on the return for the taxable year or (2) $5,000. Sec. 6662(d)(1)(A).

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate (1) reasonable cause for the underpayment and (2) that the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c)(1). Regulations promulgated under section 6664(c) further provide that the

**[*8]** determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance on the advice of a tax professional may, but does not necessarily, establish reasonable cause and good faith for the purpose of avoiding a section 6662(a) penalty. Sec. 1.6664-4(b)(1), Income Tax Regs.; see also United States v. Boyle, 469 U.S. 241, 251 (1985) (reliance on an accountant or attorney as to a matter of tax law may be reasonable); Canal Corp. v. Commissioner, 135 T.C. 199, 218 (2010) ("The right to rely on professional tax advice, however, is not unlimited."). To avoid liability for a section 6662(a) penalty on the ground of reliance on a tax professional, a taxpayer must meet the following three requirements: "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also Charlotte's Office Boutique, Inc. v. Commissioner, 425 F.3d 1203, 1212 n.8 (9th Cir. 2005) (quoting with approval the above three-prong test), aff'g 121 T.C. 89 (2003). In addition, the advice must not be based on unreasonable factual or legal assumptions

**[*9]** (including assumptions as to future events) and must not unreasonably rely on the representations, statements, findings, or agreements of the taxpayer or any other person. Sec. 1.6664-4(c)(1)(ii), Income Tax Regs.

Respondent has met his burden of production. He has shown that the understatement exceeds 10% of the tax required to be shown on the return, which is greater than $5,000.[6] Petitioners contend that they relied on Mr. Sandlin's advice regarding the $116,667 or $116,666 deduction taken by each of their LLCs and that their reliance constitutes reasonable cause.

First, petitioners must show that Mr. Sandlin was a competent professional. At some point, Mr. Sandlin was an enrolled agent, a status which can tend to show competence. See Mortensen v. Commissioner, 440 F.3d 375, 388 (6th Cir. 2006) ("Much like a taxpayer's reliance on an attorney or an accountant, reliance on an enrolled agent is a factor we may consider in determining the reasonableness of a taxpayer's actions[.]"), aff'g T.C. Memo. 2004-279. An enrolled agent is an individual who has displayed "special competence in tax matters". 31 C.F.R. sec. 10.4(a) (2007). But Mr. Sandlin was no longer an enrolled agent when he prepared and filed petitioners' return for the 2007 taxable year. Petitioners

_____

[6]Because respondent met his burden of production as to a substantial understatement, we need not decide whether respondent has met his burden of production as to negligence.

[*10] provided no evidence that Mr. Sandlin was an enrolled agent at the time he first advised them to take the amortization deductions. Rather, the parties have not been able to discover when Mr. Sandlin received enrolled agent status. We cannot find that Mr. Sandlin had special competence simply by virtue of a status he may not have had at the time the original amortization deductions were taken and certainly did not have at the time the 2007 income tax return was filed.

Petitioners produced no other evidence tending to show that Mr. Sandlin was a competent tax adviser and no evidence on Mr. Sandlin's educational or professional background. Petitioners have failed to carry their burden to show that Mr. Sandlin was a competent tax adviser.

Even if Mr. Sandlin was a competent adviser, petitioners have not shown that they provided necessary and accurate information to him. While Mr. Sandlin was the mastermind behind these amortization deductions, Mr. Mills provided the underlying valuation. Mr. Mills came up with the $1.75 million per LLC figure, which was based on what he hypothetically would have charged the LLCs for his services over the years. Petitioners have not provided any evidence showing the accuracy of this valuation or how Mr. Mills determined it, and we consequently cannot find that petitioners have met the second Neonatology factor.

**[*11]** Finally, petitioners must also show that they relied upon Mr. Sandlin's advice in good faith. Petitioners' main reason for trusting Mr. Sandlin was that he had the trappings of success: a boat and a busy office. But an appearance of prosperity is not necessarily synonymous with competence. Furthermore, Mr. Mills admitted that he did not ask for or check references and that he did not know anything about Mr. Sandlin's background. Mrs. Mills similarly acknowledged that she did not really know anything about him until this trial. Rather, petitioners appear to have blindly trusted Mr. Sandlin.

Even Mr. Mills stated that he was skeptical about taking $350,000 worth of deductions per year for the contribution of his own life to the LLCs. Petitioners stated that Mr. Sandlin provided them copies of cases and statutes purporting to support such amortization deductions, but they were unable to produce these sources of authority. Given petitioners' failure to investigate Mr. Sandlin's professional and educational background, the "too good to be true" nature of the advice, and their inability to produce the authority they allegedly received, we cannot find that petitioners relied in good faith on Mr. Sandlin's advice.

Petitioners have not shown that they meet the three Neonatology factors and therefore have failed to show reasonable cause and good faith for the

**[*12]** underpayment.  As a result, we find petitioners liable for the accuracy-related penalty.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are moot, irrelevant, or without merit.  To reflect the foregoing and concessions by the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.